| | |
|---|---|
| DISTRICT COURT, COUNTY OF ARAPAHOE, STATE OF COLORADO.<br><br>Court Address:<br>7325 S. Potomac Street<br>Centennial, CO 80112 | DATE FILED: May 19, 2021 5:00 PM<br>FILING ID: A70BAAF7C5328<br>CASE NUMBER: 2021CV30884 |
| Plaintiff: **KEVIN KELTNER, individually and as the personal representative of the ESTATE OF LEE KELTNER,**<br><br>v.<br><br>Defendants: **GOODYEAR DUNLOP TIRES NORTH AMERICA, LTD.; THE GOODYEAR TIRE & RUBBER CO.; SUMITOMO RUBBER USA, LLC.; SUMITOMO RUBBER NORTH AMERICA, INC.; HARLEY-DAVIDSON MOTOR COMPANY GROUP, LLC; CASTALLOY CORPORATION USA; NEW CASTALLOY PTY, LTD; and TEXOMA HARLEY-DAVIDSON**. | ▲ **COURT USE ONLY** ▲<br><br>Case Number:<br><br><br>Div.:           Ctrm:<br><br>*JURY TRIAL DEMANDED* |
| Attorneys for Plaintiff:<br>Robert D. Wilhite, Esq.<br>Sandra L. Hagen, Esq.<br>Brian Caplan, Esq.<br>Sawaya, Rose, McClure & Wilhite, P.C.<br>1600 Ogden Street<br>Denver, CO 80218<br>Phone Number:   (303) 839-1650<br>FAX Number:     (303) 832-7102<br>E-mail: rwilhite@sawayalaw.com; shagen@sawayalaw.com; bcaplan@sawayalaw.com<br>Atty. Reg. #:  36245, 43080, 45129<br><br>William P. Boyle, Esq.<br>The Boyle Law Firm<br>3780 S. Broadway, Suite 108<br>Englewood, CO 80113<br>Phone Number:  (720) 379-5480<br>FAX Number: (303) 479-2217<br>Email:  bill@boyleinjurylaw.com<br>Atty. Reg. #: 33486 | |
| **COMPLAINT** | |

1

Plaintiffs, Kevin Keltner, individually and as the personal representative of the Estate of Lee Keltner, (hereinafter "Plaintiffs"), by and through their attorneys, Sawaya, Rose, McClure & Wilhite, P.C. and The Boyle Law Firm, file their Complaint against Defendants, and state as follows:

## PARTIES

1. At the time of the incident, Plaintiffs resided in the City of Idaho Springs, Colorado and Plaintiff Kevin Keltner currently resides in the City of Broomfield, Colorado.

2. Defendant Goodyear Dunlop Tires North America, Ltd. was and/or is a legal entity, partnership, limited partnership, corporation, professional-corporation, professional association, proprietorship, and/or other similar entity, organized and doing business in the State of Colorado with its principal place of business located at 1144 East Market Street, Akron, OH.

3. On information and belief, Defendant Goodyear Dunlop Tires North America, Ltd. regularly conducts business within the States of Colorado and Texas and is engaged in the business of designing, marketing, advertising, testing, promoting, distributing, selling, and placing into the stream of commerce tires, including rear tire D402 MT90B 16 7 (DESC 43102-91B) ("Subject Tire") purchased by Plaintiffs and that is the subject of this lawsuit, for use on Harley-Davidson motorcycles, with the reasonable expectation that they would be used in the State of Colorado.

4. Defendant Goodyear Dunlop Tires North America, Ltd. is not a resident of Colorado.

5. Defendant Goodyear Dunlop Tires North America, Ltd. may be served with process at its corporate address/principal place of business located at 1144 East Market Street, Akron, OH.

6. Defendant Goodyear Tire and Rubber Co. was and/or is a legal entity, partnership, limited partnership, corporation, professional corporation, professional association, proprietorship, and/or other similar entity, organized and doing business in the State of Colorado with its principal place of business located at 200 Innovation Way, Dept. 616, Akron, OH.

7. On information and belief, Defendant Goodyear Dunlop Tires North America, Ltd. regularly conducts business within the State of Colorado and Texas and is engaged in the business of designing, marketing, advertising, testing, promoting, distributing, selling, and placing into the stream of commerce tires, including rear tire D402 MT90B 16 7 (DESC 43102-91B) ("Subject Tire") purchased by Plaintiffs and that is the subject of this lawsuit, for use on Harley-Davidson

motorcycles, with the reasonable expectation that they would be used in the State of Colorado.

8. Defendant Goodyear Tire and Rubber Co. is not a resident of Colorado.

9. Defendant Goodyear Tire and Rubber Co. may be served with process at its corporate address/principal place of business located at 200 Innovation Way, Dept. 616, Akron, OH.

10. Defendant Sumitomo Rubber USA, LLC was and/or is a legal entity, partnership, limited partnership, corporation, professional-corporation, professional association, proprietorship, and/or other similar entity, organized and doing business in the State of Colorado with its principal place of business located at 10 Sheridan Drive, Tonawanda, NY.

11. On information and belief, Defendant Sumitomo Rubber USA, LLC regularly conducts business within the State of Colorado and Texas and is engaged in the business of designing, marketing, advertising, testing, promoting, distributing, selling, and placing into the stream of commerce tires and tire components, including rear tire D402 MT90B 16 7 (DESC 43102-91B) also referred to as Dunlop D402 Harley Davidson tire ("Subject Tire") purchased by Plaintiffs and that is the subject of this lawsuit, for use on Harley-Davidson motorcycles, with the reasonable expectation that they would be used in the State of Colorado.

12. Defendant Sumitomo Rubber USA, LLC is not a resident of Colorado.

13. Defendant Sumitomo Rubber USA, LLC, may be served with process at its principal place of business at 10 Sheridan Drive, Tonawanda, NY, 14150.

14. Defendant Sumitomo Rubber North America, Inc. was and/or is a legal entity, partnership, limited partnership, corporation, professional-corporation, professional association, proprietorship, and/or other similar entity, organized and doing business in the State of Colorado with its principal place of business located at 8656 Haven Ave., Rancho Cucamonga, CA, 91730.

15. On information and belief, Defendant Sumitomo Rubber North America, Inc. regularly conducts business within the State of Colorado and Texas and is engaged in the business of designing, marketing, advertising, testing, promoting, distributing, selling, and placing into the stream of commerce tires and tire components, including rear tire D402 MT90B 16 7 (DESC 43102-91B), also referred to as Dunlop D402 Harley Davidson tire ("Subject Tire") purchased by Plaintiffs and is the subject of this lawsuit, for use on Harley-Davidson motorcycles with the reasonable expectation that they would be used in the State of Colorado.

16. Defendant Sumitomo Rubber North America, Inc. is not a resident of Colorado.

17. Defendant Sumitomo Rubber North America, Inc. may be served with process at its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

18. Defendants Goodyear Dunlop Tires North America, Ltd., The Goodyear Tire and Rubber Co., and Sumitomo Rubber USA, LLC are collectively referred to herein as "Goodyear Dunlop Defendants."

19. Defendant Harley Davidson Motor Company Group, LLC was and/or is a legal entity, partnership, limited partnership, corporation, professional corporation professional association, proprietorship, and/or other similar entity, organized and doing business in the State of Colorado with its principal place of business located at 3700 West Juneau, Milwaukee, WI, with its registered agent office: CT Corporation System, 301 South Bedford Street, Suite 1, Madison, WI 53703.

20. On information and belief, Defendant Harley Davidson Motor Company Group, LLC regularly conducts business within the State of Colorado and Texas and is engaged in the business of designing, marketing, advertising, testing, promoting, distributing, selling, and placing into the stream of commerce motorcycles and component parts, including rear tire D402 MT90B 16 7 (DESC 43102-91B – ("Subject Tire") purchased by Plaintiffs and that is the subject of this lawsuit, for use on Harley-Davidson motorcycles, with the reasonable expectation that they would be used in the State of Colorado.

21. Defendant Harley Davidson Motor Company Group, LLC is not a resident of Colorado.

22. Defendant Harley Davidson Motor Company Group, LLC may be served with process at its principal place of business, located at 3700 West Juneau, Milwaukee, WI, 53208.

23. Defendant Castalloy Corporation USA was and/or is a legal entity, partnership, limited partnership, corporation, professional-corporation, professional association, proprietorship, and/or other similar entity, organized and doing business under the laws of the State of Wisconsin.

24. On information and belief, Defendant Castalloy Corporation USA regularly conducts business within the State of Wisconsin and is engaged in the business of designing, marketing, advertising, testing, promoting, distributing, selling, and placing into the stream of commerce motorcycle component parts, including rear tire D402 MT90B 16 7 (DESC 43102-91B ) rims ("Subject Rim") for the "Subject Tire" purchased by Plaintiffs and that is the subject of this lawsuit, for use on Harley-Davidson motorcycles, with the reasonable expectation that they would be used in the State of Colorado.

25. Defendant Castalloy Corporation USA is not a resident of Colorado.

26. Defendant Castalloy Corporation USA may be served with process at its principal place of business, located at 1701 Industrial Lane, Waukesha, WI, 53189-7397, or through its registered agent, Corporation Service Company, 8040 Excelsior Drive, Suite 400, Madison, WI, 53717.

27. Defendant New Castalloy PTY LTD was and/or is a legal entity, partnership, limited partnership, corporation, professional-corporation, professional association, proprietorship, and/or other similar entity, organized and doing business under the laws of the Country of Australia.

28. On information and belief, Defendant New Castalloy PTY LTD regularly conducts business in the Country of Australia and is engaged in the business of designing, marketing, advertising, testing, promoting, distributing, selling, and placing into the stream of commerce motorcycle component parts, including rims for the "Subject Tire," including, but not limited to a Castalloy tubeless cast aluminum wheel, with a T16x3.00D rim ("Subject Rim"), which is a subject of this lawsuit, with the reasonable expectation that they would be used on Harley-Davidson motorcycles, which could reasonably be expected to be used in the State of Colorado.

29. Defendant New Castalloy PTY LTD is not a resident of Colorado.

30. Defendant New Castalloy PTY LTD may be served with process at its principal place of business, located at 76-92 Mooringe Ave., North Plympton, 5037, South Australia.

31. Defendant Texoma Harley-Davidson was and/or is a legal entity, partnership, limited partnership, corporation, professional-corporation, professional association, proprietorship, and/or other similar entity, organized and doing business under the laws of the State of Texas.

32. Defendant Texoma Harley-Davidson regularly conducts business within the State of Texas and is engaged in the business of selling, installing, and distributing Harley-Davidson motorcycles and component parts, including, but not limited to, the Subject Tire.

33. Defendant Texoma Harley-Davidson specializes in the sale, distribution, service, and promotion of Harley-Davidson motorcycles, accessories, component parts, including the Subject Tire, which the subject of this lawsuit. Defendant Texoma Harley-Davidson does, and at all relevant times, did represent itself to the public and consumers, such as Plaintiffs, as possessing superior knowledge as to Harley-Davidson Motorcycles and component parts, including the Subject Tire. As a specialty dealership and service center, it knew, or should have known, about the relevant dangers associated with the inspection and installation of tires, such as the Subject Tire.

34. Defendant Texoma Harley-Davidson is not a resident of Colorado.

Exhibit A

35. Defendant Texoma Harley-Davidson may be served with process at its business location at 4000 N, US Hwy 75, Sherman, TX, 75090.

36. Defendant Harley Davidson Motor Company Group, LLC and Defendant Texoma Harley-Davidson are collectively referred to herein as the "Harley-Davidson Defendants."

37. Defendants Goodyear Dunlop Tires North America, LTD, The Goodyear Tire & Rubber Co., Sumitomo Rubber USA, and Sumitomo Rubber North America, Inc. are collectively referred to herein as the "Goodyear Sumitomo Defendants"

38. Defendants Castalloy Corp. USA and New Castalloy PTY, LTD are collectively referred to herein as the "Castalloy Defendants."

39. Plaintiffs are informed and believe, and on that basis, allege that at all times herein mentioned, each of the Defendants, except as otherwise alleged, was the agent, servant, employee and/or engaged in a joint venture with the other Defendants and each of them was acting in the full course and scope of said agency, service, employment, and/or joint venture.

40. Upon information and belief, each of the Defendants was a successor, successor in business, successor in product line or a portion thereof, alter-ego, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of or member of an entity designing, manufacturing, assembling, packaging, modifying, selling, supplying, distributing, marketing, advertising, servicing, and/or warranting motorcycles and tires, including the Subject Tire.

## JURISDICTION AND VENUE

41. This Court has subject matter jurisdiction over the claims set forth in this Complaint pursuant to the Constitution of the United States, Article VI, Section 9.

42. Venue is proper in Arapahoe County, Colorado, under C.R.C.P. 98 (c)(1) and (5), as the subject incident occurred in Arapahoe County and this action includes nonresidents of the State of Colorado.

43. This Court has personal jurisdiction over the Defendants based on Defendants' operations and presence in Colorado, by their transacting business in or directed at Colorado, by their commission of one or more tortious acts that caused injury and damages in Colorado and/or by otherwise purposefully availing themselves of the benefits and privileges of Colorado law. Defendants submitted to the jurisdiction of this Court by doing personally or through their agents the following acts:

   a. Committing a tortious act within the State of Colorado by selling and delivering a defective product to persons, firms, or corporations in this state via its distributors, dealers, wholesalers, and brokers. This

        defective product was used by consumers in Colorado in the ordinary course of commerce and trade;

b.    Conducting and engaging in substantial business and other activities in Colorado by selling products to persons, firms, or corporations in this state via its distributors, dealers, wholesalers, and brokers. Such product was used by consumers in Colorado in the ordinary course of commerce and trade;

c.    The acts and omissions of Defendants caused injury to Plaintiffs while in Colorado. Plaintiffs used the defective product identified herein while in Colorado. At or near the time Plaintiffs were injured, Defendants engaged in solicitation activities in Colorado to promote sale, consumption, use, maintenance, service, and/or repair of their products.

d.    At all pertinent times, Defendants derived substantial revenue from the sale of their products in the State of Colorado; and,

e.    Selling products with knowledge or reason to foresee that these products would be shipped in interstate commerce and would reach the market of Colorado users and consumers.

## GENERAL ALLEGATIONS

44. In 2018, Plaintiff Lee Keltner purchased a 2002 Harley-Davidson Ultra Classic Motorcycle, model FLHTC-UI, from a gentleman named Ernest David Alonzo, who had purchased the motorcycle new from Rocky Mountain Harley in Littleton, CO. Mr. Alonzo was the sole owner prior to the sale to Plaintiff Lee Keltner.

45. While Plaintiffs were traveling on the Harley-Davidson Ultra Classic Motorcycle through Texas, they brought the bike to Texoma Harley-Davidson in Sherman, TX to purchase and replace the rear tire. The rear tire (D402 MT90B16 74H, Load Range C), serial # DATR m17M 3418, was purchased new and installed on Plaintiffs' Harley-Davidson by the service department of Defendant Texoma Harley-Davidson on July 5, 2019.

46. Upon information and belief, the serial number of the Subject Tire indicated that it was manufactured in 2018 at the Dunlop Tire Factory in Buffalo, NY.

47. Upon information and belief, the Dunlop Tire Factory in Buffalo, NY is owned by Sumitomo Rubber USA, LLC (f/k/a Goodyear Dunlop Tires North America, Ltd) and/or Sumitomo Rubber North America, Inc., which manufactures tires in the United States and internationally, including, but not limited to the "Subject Tire."

48. Upon information and belief, the "Subject Wheel" – a tubeless cast aluminum wheel, with a T16x3.00D rim - was manufactured by the Castalloy Defendants and was a Harley-Davidson brand wheel.

7

Exhibit A

49. The next day, July 6, 2019, at approximately 4:10 PM, Plaintiff Lee Keltner and his wife, Kevin Keltner were driving/riding the Harley-Davidson equipped with Dunlop D402 Harley-Davidson tire ("Subject Tire") on westbound Interstate 70 in Arapahoe County, Colorado, when the rear Subject Tire experienced a sudden and catastrophic failure resulting in loss of control of the motorcycle while at highway speeds (the "Subject Incident").

50. Upon information and belief, the Subject Tire failure was caused by a ply separation failure and the catastrophic ply separation in the Subject Tire was the result of insufficient fatigue endurance performance for the Subject Tire structure, in relation to the treat life expectancy of the tire.

51. Upon information and belief, a cause of the fatigue failure of the Subject Tire was an unacceptably thin innerliner, which led to a carcass cord shadow and a pull through the innerliner surface. The cord shadow and exposure of the carcass cord led to an accelerated oxidation and intracarcass pressurization within the tire structure.

52. Upon information and belief, the catastrophic failure in the Subject Tire was not a result of underinflation, impact, road hazard event, or interference from a motorcycle component prior to the failure.

53. Upon information and belief, the minimum value in the bead seat diameter in the Subject Wheel and/or Subject Rim leads to an adverse condition within the tolerance range for bead seat retention in a tubeless motorcycle tire – a tire that is required to fit both MT and D rims.

54. Upon information and belief, the rim design in the Subject Wheel and/or Subject Rim was non-compliant with the Standard set forth by the Tire and Rim Association (TRA), which specifies a "hump transition radius" of 0.08" +/- 0.02". The measurement on the Subject Rim/Wheel revealed a radius of 0.20, 4 times greater than the excess tolerance allowed by TRA.

55. Upon information and belief, there was an unseated bead, due to a non-compliant hump in the subject rim and the bead unseated after the catastrophic tire failure when the subject motorcycle was still upright. The catastrophic tire failure and unseated bead caused Plaintiff Lee Keltner to lose control of the motorcycle and crash, causing injuries.

56. Upon information and belief, the Subject Tire should never have left the factory.

57. At the time of the Subject Incident, Plaintiff Lee Keltner was exercising care in operating his motorcycle.

58. At the time of the Subject Incident, Plaintiff Lee Keltner was operating the Harley-Davidson equipped with the Subject Tire in a manner that was foreseeable and expected by the Defendants when the Subject Tire experienced sudden and catastrophic failure.

59. As a result of the aforementioned Subject Tire failure, the Harley-Davidson tipped over, rolled, and threw both Plaintiffs from the motorcycle.

60. Following the Subject Incident and Subject Tire failure, Plaintiffs were transported via AirLife Denver to Swedish Medical Center, where they were assessed with multiple traumatic injuries. Both received serious and substantial medical care following the Subject Incident, including surgeries and skin grafting procedures.

61. Plaintiffs were not negligent in the Subject Incident.

62. Plaintiffs have not failed to mitigate their damages.

63. To the extent that Plaintiffs suffered from any pre-existing physical conditions, such conditions are not relevant to any legitimate issues to be adjudicated herein.

## FIRST CLAIM FOR RELIEF - STRICT LIABILITY

64. The allegations made in the foregoing paragraphs are hereby incorporated by reference as though fully set forth herein.

65. At all times relevant herein, Plaintiffs exercised all appropriate due care and in no way contributed to the occurrence of the Subject Incident and/or their injuries and damages.

66. At all times relevant herein, Defendants were and are engaged in the business of designing, engineering, manufacturing, assembling, testing, labeling, packaging, marketing, fabricating, distributing, selling, inspecting, warranting, wholesaling, supplying, marketing, servicing, installing, and introducing into the steam of commerce the Subject Wheel, Subject Rim, and Subject Tire which caused injury to Plaintiffs.

67. Defendants knew that consumers would use the Subject Wheel, Subject Rim, and the Subject Tire in the manner used by Plaintiffs.

68. Upon information and belief, Defendants placed the Subject Wheel, Subject Rim, and Subject Tire in the stream of commerce and their respective stores with knowledge that the Subject Wheel, Subject Rim, and Subject Tire would be used, without inspecting for dangers and defects. Defendants knew or should have known that the ultimate users, operators, or consumers would not or could not properly inspect these products for dangerous conditions and that the detection of such defects and dangers would be beyond the capabilities of such persons.

69. At the time of the Subject Incident, the Subject Wheel, Subject Rim, and Subject Tire were in substantially the same condition as when introduced into the stream of commerce by Defendants and was being used by Plaintiffs in a reasonably foreseeable manner.

70. At the time of the Subject Incident, Plaintiffs were not aware that the Subject Wheel, Subject Rim, and Subject Tire presented any risk of injury to them and had not been advised or informed by anyone that the Subject Wheel, Subject Rim, and Subject Tire could catastrophically fail or otherwise pose a risk of harm to their health and safety.

71. The Subject Wheel, Subject Rim, and Subject Tire were unreasonably dangerous to foreseeable users, including Plaintiffs, when designed, tested, maintained, assembled, sourced, imported, distributed, manufactured, inspected, sold, installed, and placed into the stream of commerce in the following ways:

    a. The Subject Wheel, Subject Rim, and Subject Tire failed to operate as an ordinary consumer would expect;

    b. The Subject Wheel, Subject Rim, and Subject Tire were designed, assembled, sourced, imported, manufactured, distributed, sold, installed, and/or supplied in an unsafe, unreasonably dangerous and defective condition in that the Subject Wheel, Subject Rim, and Subject Tire had an unreasonable propensity to fail during normal and foreseeable conditions;

    c. The Subject Wheel, Subject Rim, and Subject Tire were defective in design, manufacture, assembly, and warnings, in that they failed to operate as marketed and advertised, and failed to alert users to the hazardous conditions described herein;

    d. The Subject Wheel, Subject Rim, and Subject Tire were defective due to inadequate, or the absence of, warnings or instructions, including warning stickers, placards, or proper documentation to alert users regarding the hazardous condition described herein.

72. An ordinary consumer such as Plaintiffs would not have recognized the potential risks and dangers inherent in the Subject Wheel, Subject Rim, and Subject Tire.

73. The risk of danger in the design of the Subject Wheel, Subject Rim, and Subject Tire outweighed any benefits of the design, and safer alternative designs were available at the time of manufacture and supply. Therefore, the Subject Wheel, Subject Rim, and Subject Tire presented a substantial and unreasonable risk of serious injuries to users of said product, such as Plaintiffs.

74. At the time of the Subject Incident, the Subject Wheel, Subject Rim, and Subject Tire were in substantially the same condition as when designed, tested, maintained, assembled, sourced, imported, distributed, manufactured, inspected, sold, installed, and placed into the stream of commerce by Defendants.

75. For the reasons above, the Subject Wheel, Subject Rim, and Subject Tire were unreasonably dangerous to foreseeable users, including Plaintiffs.

Exhibit A

76. As a direct and proximate cause of the foregoing conduct of the Defendants, Plaintiffs sustained serious and personal past and future bodily injuries resulting in pain, suffering, permanent impairment, disability, disfigurement, mental anguish, inconvenience, loss of the enjoyment of life, loss of household services, loss of companionship, medical expenses, medical care and treatment in the past and to be obtained in the future, lost wages, and the loss of future wages.

## SECOND CLAIM FOR RELIEF - NEGLIGENCE

77. The allegations made in the foregoing paragraphs are hereby incorporated by reference as though fully set forth herein.

78. At all times relevant herein, Plaintiffs exercised all appropriate due care and in no way contributed to the occurrence of the Subject Incident and/or their injuries and damages.

79. At the time of the Subject Incident, the Subject Wheel, Subject Rim, and Subject Tire were in the substantially the same condition as when introduced into the stream of commerce by the Defendants and was being used by Plaintiffs in a reasonably foreseeable manner.

80. At all times relevant herein, the Subject Wheel, Subject Rim, and Subject Tire were unreasonably dangerous to foreseeable users, including Plaintiffs.

81. Ordinary consumers, such as Plaintiffs, would not have recognized the potential risks and dangers inherent in the Subject Wheel, Subject Rim, and Subject Tire.

82. The risk of danger in the design of the Subject Wheel, Subject Rim, and Subject Tire outweighed any benefits of the design, and safer alternative designs were available at the time of manufacture and supply.  Therefore, the Subject Wheel, Subject Rim, and Subject Tire presented a substantial and unreasonable risk of serious injuries to users of said product, such as Plaintiffs.

83. In researching, testing, designing, manufacturing, labeling, selling, distributing, advertising, promoting, marketing, servicing, and/or supplying tires and related component parts for Harley-Davidson motorcycles, Defendants did so in conscious disregard for the safety of the users and consumers of said products, as well as bystanders and others who would foreseeably come into contact with said products.  Upon information and belief, the Defendants had specific prior knowledge that there was a high risk of injury or death resulting from the use of said products, specifically the Subject Wheel, Subject Rim, and Subject Tires.

84. Upon information and belief, Defendants were aware that users of the Subject Wheel, Subject Rim, and Subject Tires could cause serious and life-threatening injury, and Defendants knew that the users of these Harley-Davidson tires, wheels, and rims, including the Subject Wheel, Subject Rim, and Subject Tire that

injured Plaintiffs, assumed that the tires, wheels, and rims were safe, when in fact, said products posed an unreasonable hazard to human life and safety.

85. Upon information and belief, with said knowledge, Defendants opted to design, manufacture, sell, label, distribute, warrant, market, service, and/or supply tires, wheels and rims without attempting to protect users and consumers of the high risk of injury or death resulting from the use of said products. Rather than attempting to warn and/or protect users and consumers from said hazards, Defendants failed to reveal their knowledge of said risks, and fraudulently, knowingly, consciously, and actively concealed and suppressed said knowledge from users, consumers, and other members of the general public, including Plaintiffs.

86. Upon information and belief, the aforementioned conduct of Defendants was motivated by the financial interests of Defendants in the continuing, uninterrupted manufacture, distribution, supply and sale of said products. In pursuance to said financial motivation, Defendants consciously disregarded the safety of users and consumers of said products.

87. Upon information and belief, and at all times relevant, Defendants negligently, recklessly, and carelessly manufactured, fabricated, designed, assembled, distributed, sold, inspected, warranted, labeled, marketed, and advertised the Subject Wheel, Subject Rim, and Subject Tire such that they were dangerous and unsafe for their intended and/or reasonably foreseeable use.

88. Defendants owed a duty to Plaintiffs to exercise reasonable care in the design, manufacture, inspection, distribution and sale of the Subject Tire to ensure that the product was safe for its intended and/or reasonably foreseeable use.

89. Defendants knew, or in the exercise of due care should have known, that the Subject Wheel, Subject Rim, and Subject Tire would be used without inspection in an unreasonably dangerous condition and would create a foreseeable risk of harm to users, such as Plaintiffs. Defendants were under a duty to properly and adequately instruct, warn, and/or sell the Subject Wheel, Subject Rim, and Subject Tire in a reasonably safe condition as not to present a danger to members of the general public who reasonably and expectedly, under ordinary circumstances, would come into contact with it, including Plaintiffs.

90. Defendants failed to exercise the amount of care in the design, manufacture, inspection, distribution, and sale of the Subject Wheel, Subject Rim, and Subject Tire that a reasonably careful manufacturer, designer, supplier, or seller would have used in similar circumstances to avoid exposing others to a foreseeable risk of harm.

91. Defendants knew, or reasonably should have known, that the Subject Wheel, Subject Rim, and Subject Tire was dangerous when used or misused in a reasonably foreseeable manner. Defendants knew, or reasonably should have

Exhibit A

known, that ordinary users, like Plaintiffs, would not realize the hazards and risks posed by the Subject Wheel, Subject Rim, and Subject Tire.

92. Upon information and belief, at the time of the Subject Incident, Plaintiffs were not aware that the Subject Wheel, Subject Rim, and Subject Tire presented any risk of injury to them, and had not been advised or informed by anyone that the products could catastrophically fail or otherwise pose a risk to their health and safety.

93. Defendants failed to adequately warn purchasers, consumers, and end-users, including Plaintiffs, about the severe hazards posed by the Subject Wheel, Subject Rim, and Subject Tire.  A reasonable manufacturer, distributer, designer, supplier, or seller under the same or similar circumstances would have warned of the dangers posed or instruct on the safe use of the Subject Wheel, Subject Rim, and Subject Tire.

94. Defendants breached their duty of care and were negligent by failing to design, engineer, manufacture, assemble, test, label, package, market, distribute, sell, service, install, and introduce into the stream of commerce the Subject Wheel, Subject Rim, and Subject Tire in a manner so as to render the products safe for the intended purpose of providing a safe and adequate design that would not fail with normal and foreseeable use.

95. Defendants breached their duty of care and were negligent by designing, engineering, manufacturing, assembling, testing, labeling, packaging, marketing, distributing, selling, installing, and introducing into the stream of commerce the Subject Wheel, Subject Rim, and Subject Tire in a defective condition that was unreasonably dangerous and unfit for consumer use.

96. Defendants breached their duty of care and were negligent by failing to adequately test and inspect the Subject Wheel, Subject Rim, and Subject Tire to determining whether the product provided a reasonably adequate design for its intended use.

97. Defendants breached their duty of care by misrepresenting the safety of the Subject Wheel, Subject Rim, and Subject Tire.

98. Defendants breached their duty of care by failing to provide reasonable and adequate warnings to suppliers, purchasers, and users of the Subject Wheel, Subject Rim, and Subject Tire to alert users of the dangerous conditions described herein.

99. Defendants breached their duty of care by failing to provide sufficient warnings as to the reasonably foreseeable dangers in the intended use of the Subject Wheel, Subject Rim, and Subject Tire.

Exhibit A

100. Defendants breached their duty of care by failing to hire, train, monitor, and manage employees capable of property manufacture, assembly, inspection, testing, and/or quality control procedures.

101. Defendants breached their duty of care by failing to make timely correction to the Subject Wheel, Subject Rim, and Subject Tire and failing to adopt and/or implement proper quality control procedures.

102. Defendants breached their duty of care by failing to perform a design failure mode effects and analysis and/or finite element analysis based on projected use and service of the Subject Wheel, Subject Rim, and Subject Tire.

103. The negligence described above directly and proximately caused the Subject Incident and the injuries sustained by Plaintiffs in that it directly and in natural continuous sequence, produced or sustainably contributed to their injuries.

104. As a direct and proximate result of the foregoing actions or inactions of Defendants, and as a result of the defective condition of the Subject Wheel, Subject Rim, and Subject Tire, Plaintiffs sustained, among other things, serious and permanent bodily injuries, scarring, disfigurement, physical and emotional pain and suffering, permanent impairment, loss of function, disability, inconvenience, loss of companionship, loss of enjoyment of life, and emotional distress.

105. As a direct and proximate cause of the foregoing conduct of the Defendants, Plaintiffs sustained, among other things, serious and permanent bodily injuries, scarring, disfigurement, physical and emotional pain and suffering, permanent impairment, loss of function, disability, inconvenience, loss of companionship, loss of enjoyment of life, loss of past and future wages, household services, and emotional distress.

**THIRD CLAIM FOR RELIEF – COLORADO CONSUMER PROTECTION ACT**

106. The allegations contained in the foregoing paragraphs are incorporated herein by reference as though fully set forth herein.

107. Plaintiffs, at all times, were consumers of Defendants' Subject Wheel, Subject Rim, and Subject Tire.

108. Upon information and belief, in the course of their businesses, Defendants have designed and continue to design, manufacture, market, distribute, sell, and place into the stream of commerce the Subject Wheel, Subject Rim, and Subject Tire purchased in Texas and used across the State of Colorado. Defendants failed, and continue to fail, to disclose and conceal the serious safety hazards and risks posed by the Subject Wheel, Subject Rim, and Subject Tire.

109. At all times relevant, Defendants have had knowledge of the serious safety hazards and risks posed by the Subject Wheel, Subject Rim, and Subject Tire.

110. Upon information and belief, Defendants have been and remain obligated to disclose the material safety hazards and risks before reasonable consumers expect the Subject Wheel, Subject Rim, and Subject Tire to be safe for the intended and reasonably foreseeable use on Harley-Davidson motorcycles.  In failing to disclose this significant safety and potentially life-threatening defect known to Defendants, but not to reasonable consumers like Plaintiffs, Defendant engaged in, and continue to engage in, unfair and deceptive trade practices.

111. Defendants are in the business of designing, manufacturing, marketing, testing, promoting, selling, and/or distributing the Subject Wheel, Subject Rim, and Subject Tire purchased and used by Plaintiffs, and are therefore engaged in the conduct of trade and commerce.

112. Selling or distributing the Subject Wheel, Subject Rim, and Subject Tire for use by consumers like Plaintiffs when Defendants knew or should have known of the unreasonable risk of the products catastrophically failing without disclosing this fact to potential buyers and/or users prior to purchase and/or use and instead expressly warranting that Defendants were selling and distributing fit tire products including the Subject Wheel, Subject Rim, and Subject Tire, was misleading and constitutes an unfair and deceptive trade practice.

113. The above deceptive practices significantly impact the public as actual or potential customers of Defendants as discussed above.

114. As a direct and proximate cause of the foregoing conduct of the Defendants, Plaintiffs sustained serious and personal bodily injuries resulting in pain and suffering, permanent impairment, disability, disfigurement, mental anguish, inconvenience, loss of enjoyment of life, loss of services, loss of companionship, loss of household services, past and future medical expenses, medical care, and treatment, and past and future loss of wages.

### FOURTH CLAIM FOR RELIEF – BREACH OF WARRANTIES

115. The allegations contained in the foregoing paragraphs are incorporated herein aby reference and though set forth in full.

116. Upon information and belief, express warranties, warranties of future performance, an implied warranty of merchantability, and/or implied warranty of fitness existed and/or were issued by Defendants with respect to the Subject Wheel, Subject Rim, and Subject Tire.

117. Defendants knew or had reason to know the particular purposes for which the Subject Wheel, Subject Rim, and Subject Tire were required and were to be used, and that purchasers and users and others, such as Plaintiff, would rely on

15

Defendants' skill or judgment in designing, testing, manufacturing, and furnishing goods suitable for such purposes and uses.

118. The Subject Wheel, Subject Rim, and Subject Tire were not fit for the particular purpose for which they were intended, and for which were used, nor were they fit for the ordinary purpose for which they were intended and for which they were to be used, and they were not of merchantable quality at the time they were offered for sale.

119. At the time the Subject Wheel, Subject Rim, and Subject Tire were designed, manufactured, and sold, Defendants knew or reasonably should have known that they were defective and not reasonably safe for the uses intended.

120. At the time the Subject Wheel, Subject Rim, and Subject Tire was designed, manufactured, and sold, Defendants knew or reasonably should have known that they posed an unreasonable risk of injury in the consuming public, for the reasons set forth in the previous Claims for Relief.

121. The Subject Wheel, Subject Rim, and Subject Tire and all of their component parts did not conform to the warranties, warranties of future performance, affirmations, and representations made by Defendants.

122. Plaintiffs relied to their detriment on Defendants' express and/or implied warranties, including but not limited to warranties of future performance.

123. Plaintiffs were third-party beneficiaries of express and/or implied warranties, including but not limited to warranties of future performance, made by Defendants to others.

124. Defendants' breach of their express and/or implied warranties, including but not limited to warranties of future performance, was a proximate cause of the injuries to Plaintiffs and the resulting damages to Plaintiffs.

125. Plaintiffs hereby specifically pleads and provides notice to Defendants with respect to the said breach of warranties in accord with C.R.S. 4-2-607(3).

126. Defendants are liable to Plaintiffs for injuries and damages caused by their breach of warranties.

## **FIFTH CLAIM FOR RELIEF – NEGLIGENCE *PER SE***

127. The allegations contained in the foregoing paragraphs are incorporated herein by reference as though fully set forth herein.

128. Defendants owed a duty to design, manufacture, market, distribute, sell, and place into the stream of commerce a reasonably safe tire rim that conformed to established standards.

129. The aforementioned acts of negligence were also in violation of 49 C.F.R. sec. 571.120 and the Tire and Rim Association's standard which specifies a "hump transition radius" of 0.08" +/- 0.02". The measurement on the Subject Rim/Wheel revealed a radius of 0.20, 4 times greater than the excess tolerance allowed by TRA, in violation of the federal regulation relating to Federal Motor Vehicle Safety Standards.

130. The aforementioned statutes, ordinances, regulations, and codes were enacted to protect persons such as Plaintiffs from harm and injury of the type inflicted upon them. As such, the conduct of Defendants in violating said statutes, ordinances, regulations, and codes constitutes negligence *per se.*

131. As a direct and proximate result of the foregoing actions or inactions of Defendants, and as a result of the defective condition of the Subject Wheel, Subject Rim, and Subject Tire, Plaintiffs sustained, among other things, serious and permanent bodily injuries, scarring, disfigurement, physical and emotional pain and suffering, permanent impairment, loss of function, disability, inconvenience, loss of companionship, loss of enjoyment of life, and emotional distress.

132. As a direct and proximate cause of the foregoing conduct of the Defendants, Plaintiffs sustained, among other things, serious and permanent bodily injuries, scarring, disfigurement, physical and emotional pain and suffering, permanent impairment, loss of function, disability, inconvenience, loss of companionship, loss of enjoyment of life, loss of past and future wages, household services, and emotional distress.

## **SIXTH CLAIM FOR RELIEF – LOSS OF CONSORTIUM**

133. The allegations contained in the foregoing paragraphs are incorporated herein by reference as though fully set forth herein.

134. At all times relevant hereto, Plaintiffs Lee and Kevin Keltner were husband and wife pursuant to the laws of the State of Colorado and had a close and loving familial relationship.

135. The Plaintiffs Lee and Kevin Keltner were married prior to the Subject Incident and since their marriage, resided together as husband and wife until Plaintiff Lee Keltner's death in 2020.

136. Following the Subject Incident, and as a direct result of the injuries they sustained, their marital relationship was negatively affected. They were unable to assist each other in the ways previously done prior to the Subject Incident.

137. As a proximate result of Defendants' acts and omissions as set forth herein, Plaintiffs have suffered a loss of time, loss of income, and loss of consortium,

affection, love, support, care, society, comfort, companionship, and household services of each other, as well as other economic and noneconomic damages.

## **PLAINTIFFS DEMAND A TRIAL BY JURY**

**WHEREFORE**, Plaintiffs requests that judgment be entered in favor of Plaintiffs and against Defendants, jointly and severally if and where appropriate, in an amount to fairly compensate for the injuries as set forth above, court costs, attorney fees, expert witness fees, statutory interest from the date this cause of action accrued or as otherwise permitted under Colorado law and for such other and further relief as this Court deems just and proper and / or Plaintiffs prays for the following relief:

A.  For an amount which will reasonably compensate the Plaintiffs for past, present and future economic loss;

B.  For an amount which will reasonably compensate the Plaintiffs for past, present and future lost wages;

C.  For an amount which will reasonably compensate Plaintiffs for past for medical expenses, past and future;

D.  For an amount which will reasonably compensate Plaintiffs for pain and suffering, past and future, including but not limited to, pain and suffering, loss of life, mental anguish, and emotional distress;

E.  For an amount which will reasonably compensate Plaintiffs for loss of enjoyment of life and/or the capacity of life; extreme mental and emotional distress and impairment to quality of life;

F.  For an amount which will reasonably compensate Plaintiffs for past for non-economic damages;

G.  For an amount which will reasonably compensate Plaintiffs for temporary and permanent physical impairment, disability, and disfigurement damages;

H.  For an amount which will reasonably compensate Plaintiffs for loss of love, support, care, comfort, companionship, affection, consortium, and society.

I.  For an amount which will reasonably compensate Plaintiffs for compensatory damages as are permissible at common law and by statute and to which Plaintiffs are entitled;

J.  For an amount which will reasonably compensate Plaintiffs for out-of-pocket expenses; court costs, expert witness fees, expenses, charges, and fees incurred in the prosecution of the matter;

K.  For an amount which will reasonably compensate Plaintiffs for attorney's fees, treble damages, costs, and other remedies available under the Colorado

Consumer Protection Act;

L.  For interest as provided by Statute from the date of the incident that forms the basis of the complaint to the date of verdict or judgment and post-judgment interest;

M.  For an amount which will reasonably compensate Plaintiffs for all other and further relief and compensatory damages as are permissible at common law and as the Court may deem just, proper, or both.

Respectfully submitted this 19th day of May, 2021.

SAWAYA, ROSE, MCCLURE & WILHITE, P.C.

/s/ *Robert D. Wilhite*
This pleading was filed electronically pursuant to Rule 121 §1-26
Original signed pleading is on file in counsel's office

Plaintiff's Address:
8400 West 106th Avenue
Broomfield, CO 80021

**Exhibit A**